UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHAZ GULLEY,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:18cv2140 (SRU) |
| COMMISSIONER SEMPLE, et al.,<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

Chaz Gulley ("Gulley") is incarcerated at Corrigan-Radgowski Correctional Institution. He has filed a civil rights action against Commissioner Scott Semple, Directors of Security Antonio Santiago and Christine Whidden, District Administrator Angel Quiros, Counselor Supervisor Aldi, Warden William Mulligan, District Administrator Edward Maldonado, Counselor Fiore, Captain Lizon and Captain Michelle Walsh. For the reasons set forth below, the complaint is dismissed without prejudice.

**I.**     **Standard of Review**

Under Section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that

"[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**II.     Facts**

In January 2016, Gulley was housed at Corrigan Correctional Institution in the restrictive housing unit. *See* Compl. at 3 ¶ 5. At that time, he was in the process of completing a 90-day Chronic Disciplinary Program due to having accumulated too many disciplinary reports. *See id.* His cell was next door to an inmate who had been designated as a member of a security risk group. *See id.* At that time, Gulley was not a member of a gang or security risk group. *See id.*

One of the inmate security risk group members in the cell next to Gulley's passed Gulley some security risk group material. *See id.* A correctional officer observed that behavior and issued Gulley a disciplinary report for security risk group affiliation. *See id.* A disciplinary hearing officer subsequently found Gulley guilty of security risk group affiliation. *See id.* at 4 ¶ 5. Gulley claims that he was subsequently housed in a security risk group program for over two years because of his affiliation with a security risk group called the Bloods gang. *See id.* He repeatedly denied any affiliation with the Bloods gang and accumulated multiple disciplinary reports in the process. *See id.* The Board of Pardons and Paroles denied Gulley's request for parole, and he is not eligible to earn Risk Reduction Earned Credits because he had been designated as a security risk group member. *See id.*

On December 10, 2017, Gulley sent a request to Counselor Fiore to confirm that he would complete the security risk group program on March 14, 2018. *See id.* at 5 ¶ 7 & at 6 ¶ 6.

Counselor Fiore informed Gulley that upon completion of the program, she would submit the "removal paperwork to the Security Division." *See id.* ¶ 9. Counselor Supervisor Aldi subsequently ordered Captain Walsh to extend Gulley's stay in the security risk group program for thirty more days. *See id.* at 6 ¶ 11.

On March 2, 2018, Captain Walsh informed Gulley that pursuant to an order issued by Counselor Supervisor Aldi, his stay in the security risk group program would be extended until April 14, 2018. *See id.* ¶ 12. On March 8, 2018, Gulley received a parole notice indicating that consideration of his release on parole would be postponed until a date in March 2019 because of his designation as a member of a security risk group. *See id.* ¶ 14. At that time, Gulley would be considered for parole if he had successfully completed the security risk group program. *See id.* at 6-7 ¶ 14.

On March 17, 2018, Correctional Officer Sheahan "cuss[ed] out" Gulley for no reason. *See id.* 7 ¶ 16. In response, Gulley threw his tray of food and it landed at Officer Sheahan's feet. *See id.* Supervisors responded to the scene, handcuffed Gulley and placed him in a cell in the restrictive housing unit. *See id.* ¶ 18. Gulley attempted to commit suicide by hanging himself from the light fixture in his cell. *See id.* ¶ 19. Correctional officials called a code, placed Gulley on a stretcher and carried him to the medical department. *See id.* ¶ 20. Medical staff members applied a brace to Gulley's neck and transferred him to the University of Connecticut Health Center for treatment. *See id.* ¶ 21.

Hospital officials released Gulley to MacDougall Correctional Institution. *See id.* at 8 ¶ 23. Dr. Coleman reviewed Gulley's mental health status and custody officials transferred Gulley to phase one of the security risk group program at Northern Correctional Institution

("Northern"). *See id.* Gulley wrote to Captain Lizon to find out why he had not been reviewed prior to sending him to phase one of the security risk group program at Northern. *See id.* ¶ 24. On May 2, 2018, Captain Lizon indicated that Gulley had been transferred to Northern because he had been charged with assaulting a staff member. *See id.* ¶ 25.

On April 18, 2018, Captain Lizon presented Gulley with a phase one regression form. Gulley refused to sign the form. *See id.* at 10 ¶ 31. Gulley participated in a hearing to dispose of the disciplinary report he had received for assaulting Officer Sheahan on March 17, 2018. *See id.* ¶ 34. Hearing Officer Prior found Gulley guilty of the assault even though she characterized the assault as "incidental." *See id.* Officer Prior imposed fewer sanctions on Gulley "to be fair." *See id.*

After the hearing, Gulley protested by covering the window in his cell. *See id.* ¶ 35. Prison officials sprayed Gulley with a chemical agent and placed him on in-cell restraints. *See id.* Forty-eight hours later, prison officials removed Gulley from in-cell restraint status. *See id.* ¶ 37. He sustained bruises to his ankles and wrists from the restraints. *See id.*

Gulley filed a grievance regarding his transfer to Northern without having been reviewed for phase one placement. *See id.* at 8 ¶ 26. Warden Mulligan denied the grievance because he thought all policies had been followed. *See id.* at 9 ¶ 27. On August 4, 2018, Administrator Quiros denied Gulley's appeal of denial of his level one grievance on the ground that it had not been filed in a timely manner. *See id.* ¶ 29.

In July 2018, Gulley completed the 120-day confinement requirement for phase one of the security risk group program and prison officials transferred him to Walker Correctional Institution ("Walker") to complete phase two of the program. *See id.* at 11 ¶ 38. On August 23,

2018, Gulley spoke to a former cellmate by telephone. *See id.* ¶ 39. He received a disciplinary report for speaking or communicating while using "Blood lingo, slang" during the telephone call. *See id.* Gulley claims that he picked up on certain slang words used by members of the Bloods gang when he had lived with his former cellmate. *See id.* at 12 ¶ 41.

## III. Discussion

Gulley contends that the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment and denied him due process in violation of the Fourteenth Amendment. He claims that he has been unable to earn RREC, has suffered from emotional distress, pain, fear and anxiety and back and shoulder pain due to wearing handcuffs behind his back during recreation. For relief, he seeks monetary damages, removal from security risk group status, restoration of RREC and reentry programming.

### A. Commissioner Semple, District Administrator Maldonado Directors of Security Santiago and Whidden

Gulley does not mention Commissioner Semple, District Administrator Maldonado, Director of Security Santiago or Director of Security Whidden in the body of the complaint. As such, he has not alleged that they violated his federally or constitutionally protected rights. The claims against Semple, Maldonado, Santiago and Whidden are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Counselor Fiore and Captain Walsh

Gulley's only allegation against Counselor Fiore is that at some point prior to March 2, 2018, he or she stated that paperwork would be submitted to have Gulley removed from the security risk group program after he completed 120 days in the program. Subsequently, Counselor Supervisor Aldi extended Gulley's stay in the program for another thirty days. On

5

March 2, 2018, Captain Walsh informed Gulley that Counselor Supervisor Aldi had extended his time in the security risk group program by thirty days. The allegations with regard to the conduct of Counselor Fiore and Captain Walsh in communicating information to Gulley regarding the date of his release from the security risk group program do not state a claim of a violation of Gulley's constitutional rights. The claims against Counselor Fiore and Captain Walsh are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C. Retaliation Claim

Gulley characterizes the decision by Counselor Supervisor Aldi to extend his stay in the security risk group program from March 14, 2018 to April 14, 2018 to be retaliatory. Gulley states that Aldi was retaliating against him because of "past verbal agreements and civil cases, etc." Gulley contends that the extension of his stay in the security risk group program precluded him from earning RREC and from being considered for release on parole until March 2019.

When prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a Section 1983 retaliation claim may be sustained. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted). The Second Circuit has "instructed district courts to approach prisoner

6

retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (internal quotation marks and citation omitted).

Although filing a lawsuit constitutes protected First Amendment activity, Gulley does not indicate when he filed a lawsuit against Aldi. Nor does he describe the "verbal agreements" or when those agreements occurred. Thus, Gulley has not alleged sufficient facts to meet the causal connection prong of a retaliation claim. The allegation of retaliatory conduct by Counselor Supervisor Aldi is conclusory and is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### D. Eighth Amendment Claim

In the introductory paragraph of the complaint, Gulley alleges that he has been subjected to cruel and unusual punishment. Gulley makes reference to his placement on in-cell restraints after the hearing held on April 18, 2018 to dispose of disciplinary report charging him with assault on a staff member and the fact that he suffered bruising to his ankles and wrists from the restraints. *See* Compl. at 10-11 ¶¶ 34-37. Gulley does not allege that any named defendant was involved in his placement on in-cell restraints. Furthermore, in a note following those allegations, Gulley indicates that he will be filing a separate action to challenge the use of force and cruel and unusual punishment imposed on him in connection with his placement on in-cell restraints. *See id.* ¶ 37. Thus, I do not consider Gulley to be pursuing those allegations of Eighth Amendment violations in this action.

In the last paragraph of the complaint, Gulley states that he suffers from emotional distress, anxiety and an untreated mental health condition or conditions and that he has

7

experienced pain in his back and shoulder from recreating with his hands cuffed behind his back. *See id.* at 12 ¶ 43. The Second Circuit "ha[s] recognized that 'the Eighth Amendment requires that prison inmates be allowed some out-of-cell exercise.'" *Gardner v. Murphy*, 613 F. App'x 40, 42 (2d Cir. 2015) (quoting *Williams v. Greifinger,* 97 F.3d 699, 704 n.5 (2d Cir. 1996)). Prison officials may limit the right to out-of-cell exercise "where there is a valid safety exception or certain unusual circumstances." *Id.* (citing *Williams*, 97 F.3d at 704). Gulley does not allege that he did not have a meaningful opportunity to exercise in his cell or in another indoor area within the prison.

Furthermore, Gulley does not allege that any defendant was aware of his feelings of distress and anxiety, his mental health conditions or involved in imposing the requirement that he recreate in handcuffs behind his back. Nor does he allege that he made any defendant or medical staff members at Northern aware of his mental health conditions or symptoms or the injuries to his back and wrists. As such, Gulley has not alleged that any defendant subjected him to a condition that violated his Eighth Amendment rights. The Eighth Amendment claim is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

**D.     Due Process Claim – Regression Back to Phase One of SRG Program**

Gulley alleges that shortly after receiving a disciplinary report charging him with assaulting a staff member on March 17, 2018, prison officials transferred him to Northern and placed him in phase one of the security risk group program. Gulley claims that he did not receive the due process that he was entitled to under Administrative Directive 6.14 because the assault charge was not reviewed prior to his regression back to phase one of the security risk group program. He alleges that inmates in phase one of the security risk group program must

8

recreate with their hands cuffed behind their backs. Gulley remained in phase one of the security risk group program until July 2018.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The standard analysis for a claimed violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. A plaintiff has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000).

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered a due process claim asserted by inmates who had been classified for placement in a high security state prison for safety and security, rather than disciplinary reasons. In determining whether the inmates had a liberty interest in avoiding confinement in the very restrictive, maximum security prison for an indefinite period of time, the Court applied the standard set forth in *Sandin*. *See id.* at 223. ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language

9

of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 at 484.). The Court concluded that the restrictive conditions at Ohio State Penitentiary "taken together [] impose[d] an atypical and significant hardship" on inmates and gave "rise to a liberty interest in their avoidance." *Id.* at 224.

The Second Circuit has held that "in determining whether [an inmate] endured an atypical and significant hardship" a district court should consider the duration of the inmate's confinement in segregation and "the extent to which the conditions [in] . . . segregation differ from other routine . . . conditions" in general population." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks and citation omitted). With regard to duration, the Second Circuit has resisted establishing a "bright line rule that a certain period of . . . confinement [in a restrictive housing unit] automatically fails to implicate due process rights." *Id.*

Gulley has alleged that he remained in the first phase of the security risk group program for 120 days. He describes only one condition of phase one – the requirement that he recreate in handcuffs behind his back. Gulley does not allege that he could not recreate wearing handcuffs. Rather, he states that he suffered pain in his shoulders and back from being handcuffed behind his back during recreation. This allegation does not rise to the level of an atypical and significant hardship. Although Gulley generally contends that he suffers from emotional distress and anxiety and an untreated mental health condition or conditions, he does not provide facts in support of those allegations or how they relate to any conditions he experienced in phase one of the security risk group program.

Gulley has not alleged that he experienced conditions of confinement in phase one of the security risk group program that were sufficiently atypical or significant as compared to the basic conditions of prison life to give rise to a liberty interest in their avoidance. Absent a liberty interest, Gulley is not entitled to procedural due process protections. Thus, I conclude that the facts as alleged in the complaint, do not state a claim that Counselor Supervisor Aldi, Captain Lizon, Warden Mulligan, District Administrator Quiros or any other defendant violated Gulley's procedural due process rights in connection with his regression back to phase one of the security risk group program at Northern in March 2018. The Fourteenth Amendment due process claim regarding placement in phase one of the security risk group program is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### D. Due Process Claim – August 2018 Disciplinary Report

Gulley mentions that on August 23, 2018 at Walker, he received a disciplinary report for communicating through the use of slang words associated with a security risk group – the Bloods gang. He does not allege who issued him the disciplinary report, whether a hearing was held in connection with the issuance of the disciplinary report, whether a hearing officer or other official found him guilty of the infraction or whether he received any sanctions in connection with the issuance of the report. As such, Gulley has not alleged that any defendant violated his Fourteenth Amendment right to due process in connection with the issuance of the report. The due process claim associated with the August 23, 2018 disciplinary report is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**It is hereby ordered that:**

**(1)** All claims against Captain Walsh, Counselor Fiore, Commissioner Semple, District Administrator Maldonado, Director of Security Santiago and Director of Security Whidden and the Fourteenth Amendment due process claim associated with the August 23, 2018 disciplinary report are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The First Amendment retaliation claim against Counselor Supervisor Aldi, the Eighth Amendment claim regarding the requirement that inmates recreate in handcuffs behind their backs and the Fourteenth Amendment due process claim related to Gulley's regression back to phase one of the security group program in March 2018 against Counselor Supervisor Aldi, Captain Lizon, Warden Mulligan, District Administrator Quiros are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Gulley will have thirty (30) days to file an amended complaint with regard to the First Amendment retaliation claim against Counselor Supervisor Aldi, the Eighth Amendment claim regarding the requirement that inmates recreate in handcuffs behind their backs and the Fourteenth Amendment due process claim related to Gulley's regression back to phase one of the security group program in March 2018 against Counselor Supervisor Aldi, Captain Lizon, Warden Mulligan, District Administrator Quiros, in order to correct the deficiencies outlined above.

**(2)** If Gulley chooses not to file an amended complaint within the time specified, the Clerk is directed to enter judgment for the defendants and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of January 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge